*931 opinion-.
Love:
The issues will be discussed in the order previously mentioned.
The first issue is whether the assessment made by the respondent on June 5, 1925, for the year 1918, in the amount of $6,605.59 was barred by the statute of limitations. Section 277 (a) (2) of the Revenue Act'of 1924, and section 277 (a) (3) of the Revenue Act of *932 1926 provide that, except as provided in section 278, the amount of income and profits taxes imposed by the Revenue Act of 1918 “ shall be assessed within 5 years after the return was filed.” Petitioner filed a tentative return on March 13,1919, and a completed return on June 6, 1919. The statute commences to run from the date of filing the latter return. Florsheim Bros. Dry Goods Co. v. United States, 280 U. S. 453; and White v. Hood Rubber Co., 280 U. S. 453. Sections 278 (c) of both the Revenue Acts of 1924 and 1926 provide:
Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax-after the time prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon.
In its brief petitioner contends that “the record contains no evidence of a consent between the Commissioner and petitioner extending the time within which to make assessments.” In its petition, however, petitioner alleges that:
On February 5, 1924, the taxpayer duly filed a waiver covering the calendai year 1918. Said waiver by its own limitations expired “one year after the expiration of the statutory period of limitation,” 'to-wit, March 13, 1925.
In his answer to the petition, the respondent “denies that the taxpayer filed its return on March 13, 1919, but admits that on February 5, 1924, the taxpayer duly filed a waiver covering the calendar year 1918.” It is apparent from the petition that at the time it was filed, petitioner was relying on the filing of the tentative return as being the time from which the statute began to run, which position has been overrruled by the United States Supreme Court in (he two cases cited above.
In its reply brief petitioner maintains that:
No evidence was introduced to show, nor is it stipulated, that the Commissioner or a duly authorized agent ever accepted said waiver. The burden is upon the Commissioner to prove an extension upon the limitation period and to prove the validity of the waiver.
We see no merit in the above contention. The petition alleges and the answer admits that the consent in questiipn was “ duly filed,” and that' it expired “ one year after the expiration of the statutory period of limitation.” The statutory period of limitation was “ five years after the return was filed,” or June 6, 1924. One year thereafter would be June 6, 1925. The assessment made the day before was, therefore, within the period provided by law.
The second issue is whether petitioner is entitled to deduct from its gross income for the years 1918, 1919, and 1920, the contributions to the various organizations listed in our findings. As a general proposition corporations are not entitled to deduct donations as *933 such. It is only when the so-called donation is in fact an “ ordinary and necessary expense ” of doing business that authority is found for allowing it as a deduction from gross income. See section 234 (a) (1) of the Revenue Act of 1918, and Western Elaterite Roofing Co., 19 B. T. A. 467, and cases cited therein. See also Killian Co., 20 B. T. A. 80. The question of allowing corporations to deduct contributions was recently before the United States Circuit Court of Appeals for the Sixth Circuit in the case of American Rolling Mill Co. v. Commissioner, 41 Fed. (2d) 314. In the course of its opinion the court said:
* * * r£jle gUestion always is whether, balancing the outlay against the benefits to be reasonably expected, the business interest of the taxpayer will be advanced. * * ⅜
We cannot accept the contention that to permit the petitioner to make this contribution would give to a corporation the right to make donations to charity which is given exclusively to individuals by Section 214 (a) 11 of the Act of 1918. The contention entirely overlooks the distinction that the contribution was not a philanthropy, but was a business expenditure to be reflected in increased earnings. The right to make such expenditure is not confined to corporations but is also given to individuals. The individual has the additional right, under the statutes, to make gifts to charity that have no relation to business expenses. * * *
The evidence in the instant case, with the exception of the $100 contributed to the Citizens League in 1919, shows that the amounts expended were so directty related to petitioner’s current business as to warrant their deduction from gross income as ordinary and necessary business expenses. The evidence pertaining to the Citizens League item is too indefinite to support the same conclusion reached with respect to the other items, and the respondent’s determination as to that item is, therefore, approved.
The third and fourth issues will be discussed together. The disposition of both depends upon whether the respondent was justified in restoring to petitioner’s opening and closing inventories for the years 1918, 1919, and 1920, the 10 per cent deduction made by petitioner to allow for the sales made during the time the inventory was being taken which lasted from 10 to 14 days from about December 20 of each year. At the outset, it is noted from the record that petitioner has treated these issues as if they also pertained to the year 1921. But the pleadings in Docket No. 14932 raise no such issues, and the question will, therefore, be limited to the years 1918, 1919, and 1920.
Section 203 of the Revenue Act of 1918 provides:
That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with *934 the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.
Petitioner took its inventories upon the basis of cost or market, whichever was lower, which basis has always been recognized by the respondent as a proper basis. One of the purposes of the inventories was to show the amount of goods- on hand as of December 31 of each year. It took from 10 to 14 days to complete the inventories and for that reason petitioner always commenced taking inventories about December 20. It, however, continued to make sales during the inventory period. The merchandise sold during this period was included by petitioner as a part of the inventory before making the 10 per cent deduction. It is, therefore, quite obvious that the inventories as determined by the respondent are erroneous, since they include all of the goods that were sold during the period the inventory was being taken. The 10 per cent deduction made by petitioner was made for the purpose of taking out of the inventory as of December 31 the goods sold between the period from about December 20 to December 31. We think that some such an adjustment may properly be made, and that it only remains to be determined whether the 10 per cent deducted by petitioner was reasonable under all the circumstances. We think it was. The evidence shows that the month of December was petitioner’s busiest time; that the inventory turnover during a 10-day period in December was greater than 10 per cent; that the average cost of sales during a 10-day period in the month of December of each of the years 1918, 1919, and 1920 was greater in every instance than the amount of the 10 per cent deduction made by petitioner; and that this method of taking inventory has been consistently used by petitioner since prior to the year 1916.
In The Buss Co., 2 B. T. A. 266, we said:
The sole purpose of inventory valuation is to reflect income as clearly as possible. ⅜ * ⅜ However faulty the taxpayer’s method was, we believe that greater weight should be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used substantially reflects the income. This rule has been given great weight both by the Commissioner and the Board. Appeal of The Thomas Shoe Co., 1 B. T. A. 124, and Appeal of George C. Peterson Co., 1 B. T. A. 690.
To the same effect see also Sinsheimer Bros., Inc., 5 B. T. A. 918; Boyne City Lumber Co., 7 B. T. A. 36; E. Rauh & Sons Fertilizer Co., 12 B. T. A. 468; Justus & Parker Co., 13 B. T. A. 127; and J. M. Radford Grocery Co., 19 B. T. A. 1023.
The consistent practice must reflect income as clearly as possible. Otherwise, little weight can be given to consistency. C. Willenborg & Co. et al, 5 B. T. A. 788.
*935 In the instant case it might be said that both parties are consistent in the method contended for by each, in that petitioner contends it was justified in reducing the inventory, as ta-ken, by the 10 per cent in question, and respondent contends he was justified in restoring the percentage deducted by petitioner. The problem narrows down to a. determination of which of the two inventories more clearly reflects petitioner’s income. The trouble with the inventories as used by the respondent is that such inventories include all of the goods that were sold during the periods of taking inventory, or in other words, that the inventories as used by him were inventories of goods on hand on December 20 of each year instead of December 31. Petitioner reported its income on the calendar year basis and the inventories to be used in arriving at such income should be those of goods on hand on December 31 of each year. The petitioner has attempted to ascertain what the latter inventories were and we think the result obtained is as nearly correct as could be had under the circumstances and more clearly reflects petitioner’s income. We hold, therefore, that the respondent erred in restoring the 10 per cent deduction made by the petitioner. Similar results have been reached in May Lumber Co., 13 B. T. A. 62; James Edgar Co., 16 B. T. A. 120; The Wickens Co., 16 B. T. A. 968; and Sample Co. v. Commissioner, 23 Fed. (2d) 671.
It follows that the net income as determined by the respondent for the years 1918, 1919, and 1920 should be reduced by the amounts of $2,743.37, $1,306.15, arid $1,113.81, respectively; and that the invested capital as determined by him for the same years should be reduced by the respective amounts of $7,677.55, $10,420.92, and $11,727.07.
The fifth issue is the same as the one involved in L. S. Ayers & Co., 1 B. T. A. 1135, and was conceded by the respondent at the hearing. Petitioner’s invested capital as determined by the respondent should, therefore, be increased by the amount of $705.48.
With respect to the sixth issue, petitioner contends, first, that the respondent erred in principle, in that he should not have reduced invested capital at all on account of taxes for prior years, and, second, if the reduction should have been made, the amounts used by the respondent were erroneous. Petitioner’s first contention relative to this issue is denied. Russel Wheel & Foundry Co., 3 B. T. A. 1168,
The seventh issue is whether the respondent erred in disallowing a portion of the depreciation claimed by petitioner for the years 1918 to 1921, inclusive. For the years 1918,1919, and 1920 the respondent computed the depreciation on total cost of $76,767.03, $89,086.53. and $104,412.51, respectively, and at rates on different assets of 5, 10, 15, and 25 per cent. He now concedes that he should have used a com *936 posite rate on all assets of 10 per cent, and the parties have stipulated that the cost of the assets is as set forth in the findings of fact. The amount of depreciation for the years 1918, 1919, and 1920 should be recomputed in accordance with the present agreement of the parties. For the year 1921 we do not know upon what basis the respondent computed the allowance of $11,470.75. Neither do we know the rate used by him in his determination for this year. In a statement attached to the deficiency letter the respondent says, “ Excessive depreciation is in accordance with the revenue agent’s report.” The report is not before us. Since the parties have stipulated that a composite rate of 10 per cent should be used for all the years 1918 to 1921, inclusive, the respondent should apply this rate, if he has used a different one, to whatever basis was used by him in his deficiency letter. The petitioner contends that, in computing the depreciation for the year 1921, the composite rate of 10 per cent should be applied to the cost of the assets set out in our findings. A large portion of petitioner’s assets were acquired prior to March 1, 1913. Section 234 (a) (7) of the Revenue Act of 1921 provides in part that: “ In the case of such property acquired before March 1, 1913, this deduction shall be computed upon the basis of its fair market price or value as of March 1,1913.” No evidence was offered as to the fair market price or value of the property in question as of March 1, 1913, and in the absence of such evidence the basis used by the respondent must stand.
The eighth and thirteenth issues will be discussed together. Their solution depends upon the single question of whether petitioner charged off excessive depreciation in years prior to 1914 and in years prior to -1918. The parties have stipulated that prior to the year 1914, petitioner charged off depreciation in the amount of $99,468.62, and prior to the year 1918, petitioner charged off depreciation in the amount of $133,234.05. The parties have also stipulated that the respondent determined that petitioner charged off excessive depreciation as follows:
[[Image here]]
The parties have also stipulated that the proper annual rate for depreciation of all of petitioner’s assets during the years 1918 to 1921, inclusive, is a composite rate of 10 per cent.
Petitioner, in attempting to show that it charged off too much depreciation in years prior to 1918, offered the testimony of four witnesses for the purpose of showing that a proper composite rate *937 for depreciation for the years 1900 to 1913, inclusive, was 2½ per cent, and that a proper composite rate for depreciation for the years 1914 to 1917, inclusive, was 5 per cent. The first witness, J. R. Curtis, was a certified public accountant. He was employed by petitioner as office manager and auditor from January 1, 1913. to January 1, 1919, at which time he became treasurer of petitioner and retained that office until he resigned in May, 1922. He testified that he was familiar with petitioner’s assets from 1913, to a certain extent; that “ as far as the operation of the machines was concerned, a great many pieces of machinery would last a great manjr years, but new improvements were coining out and would make them obsolete, and consequently the depreciation would be greater than if the new machines had not come out”; that “some of the machines would have a life of 25 or 30 years, but new improvements made them obsolete ”; that “ taking into consideration the conditions that existed during the War period, the wear on the machinery was greater than it was before that, for the reason that the plant was working overtime a good deal, and the help we had was inefficient as compared to our regular help ”; and that in his opinion, if 10 per cent were a proper rate for the years 1918 to 1921, inclusive, 5 per cent would be a proper rate for the years 1914 to 1917, inclusive.
The second witness, L. R. Zeimer, was an appraiser with 29 years of experience in appraising manufacturing plants. During this period he had appraised between 250 and 300 plants similar to petitioner’s. He testified that he was familiar with the machinery used by petitioner and plants similar to petitioner’s for about 12 years prior to 1913, and- that in his opinion, the fair composite annual rate of depreciation of petitioner’s assets for the years 1900 to 1913, inclusive, was about 2½ per cent, and for the years 1914 to 1917, inclusive, was about 5 per cent, and for the years 1918 to 1921, inclusive, was about 10 per cent. His reasons for having such an opinion were that prior to 1914, a great deal of the machinery was hand and foot power, which, on account of it's slow movement did not wear out so fast; that, beginning about 1913 or 1914, automatic feed attachments came in which accelerated the speed of the machines and wore them out much faster than formerly; and that, beginning about 1918, the machines were run overtime, and with inefficient help.
The third witness, W. H. Carr, was petitioner’s factory superintendent, who has been with petitioner since its incorporation in 1889. He testified to a rate of 3 per cent for the period prior to 1914, and 5 per cent for the years 1914 to 1917, inclusive. Upon cross-examination, when asked how he arrived at those percentages, he said: “ Well, I am basing it on 10 per cent, the correct percentage *938 at this time, just to take the 10 per cent as a basis to get the basis for the other.”
The fourth witness, J. K. Neel, was petitioner’s foreman of its pressroom. He has been with petitioner since September, 1918, and also during the period .from 1911 to 1913. He testified that he “ understood ” depreciation had always been figured at 2½ per cent or 3 per cent prior to March 1, 1913, and that from 1913 to 1918 “ it is generally understood it is about 5 per cent for that period of time.” Neel was asked upon cross-examination to tell in detail how he arrived at the percentages mentioned in his direct testimony, and his answer was: “Well, it is not customary for me to do that figuring, but it is generally understood that a machine has so much life-time, and it has to be taken care of some way, and it is generally understood around a printing plant that the depreciation is so much.”
Petitioner is contending that the depreciation which it wrote off its books during the years 1900 to 1917, inclusive, was excessive. It has not explained how it arrived at the amounts written off or the circumstances which caused it to write off the depreciation in question. It asks us, however, to find that the amounts so written off were erroneous. The only evidence offered in support of such a contention is the testimony of the four witnesses outlined above. With all due regard to the sincerity of the testimony of these witnesses, we do not think that such evidence, standing alone, is sufficient to overcome the burden which was upon petitioner to prove that the practical judgment exercised by its officers 12 to 28 years ago was inferior to the more or less theoretical judgment of the witnesses who testified at the recent hearing of this case. In fact, the testimony of some of the witnesses even strengthened the action taken by petitioner’s officers during the years 1902 to 1917, inclusive, in that the testimony showed that the old machines Avere becoming obsolete and had to be replaced by more modern machinery, and it is not unreasonable, under such circumstances, to believe that petitioner’s officers made allowance for this fact in arriving at the amounts written off by them. Furthermore, it is quite significant to note from the following schedule that the additions made by petitioner to its equipment account were substantially the same as the amounts written off, which would indicate that petitioner was maintaining its plant at a certain standard throughout. The schedule showing the additions and amounts written off over the three periods for which petitioner is now contending that three different rates for depreciation should apply, is as follows:
*939 [[Image here]]
We are, therefore, of opinion that respondent’s determination in connection with the eighth and thirteenth issues should be approved.
The ninth and tenth issues will be treated together. The question is whether respondent erred in refusing to permit petitioner to restore to its capital account an amount of $6,579.55 which it expended in 1913 for a new building. The building was erected on premises leased until August 31, 1923, the petitioner being the lessee. Petitioner charged this item to expense in 1913, but now contends that it erred in so doing. We think the item in question was a capital expenditure, and that the respondent erred in not permitting petitioner to so treat it. Exhaustion should be computed in accordance with the stipulated composite rate.
With respect to the eleventh issue, the respondent conceded at the hearing that the invested capital as determined by him for the years 1918 to 1921, inclusive, should be increased by the amount of $3,945.97.
The twelfth issue was raised by petitioner for the first time at the hearing in the form of amendments to the petitions, alleging that respondent had erred in not reducing the income of petitioner for the calendar years 1918, 1919, and 1920 “by the loss sustained due to the obsoleteness of standing type and forms.” Counsel for the respondent objected very strenuously to the granting of petitioner’s motion to amend its petition in this respect, on account of being taken entirely by surprise and having had no opportunity to prepare to meet such an issue. The respondent’s objection was sustained with this reservation, that joetitioner be given permission to introduce all of its evidence relative to its contention that it sustained losses as alleged, and, if in the discretion of the Board, the former ruling should be vacated, it would be done. But this will not be necessary for the reason that even if the respondent’s objection were overruled and petitioner be given permission to amend its petition in this respect, the evidence is entirely insufficient to allow the alleged losses as claimed. In the first place, the evidence is very much confused as to whether the alleged loss was sustained in 1917 or 1918. The only years before us are the years 1918 to 1921, inclusive, and if the loss were sustained in 1917, it would not constitute a deduction in the latter years. In the second place, there is no evidence as to the cost of *940 the assets in question, and without evidence as to cost, no deduction for a loss is warranted. See United States v. Flannery, 268 U. S. 98; and McCaughn v. Ludington, 268 U. S. 106.
The fourteenth issue was .reserved for further hearing under Rule 62 of our rules of practice. -
The question involved in the fifteenth issue is whether petitioner is entitled to deduct from its gross income for the years 1919, 1920, and 1921 the dividends which were credited to the stock purchase accounts of certain of petitioner’s employees in the amounts of $2,490, $3,136, and $4,464, respectively. Petitioner contends that until the stock in question was fully paid for by the employees, the latter were not stockholders and the so-called dividends were, therefore, not dividends, but amounts paid as additional compensation.
In Hamilton Manufacturing Co., 3 B. T. A. 1045, a corporation taxpayer reissued certain shares of its treasury stock to certain of its employees, charged the book value of such shares to the personal accounts of the recipients, and credited against such accounts the amounts of dividends declared on such stock. *In that case we denied the corporation’s contentions that the amounts so credited constituted additional compensation, rather than dividends. To the same effect see Kennington Realty Co. et al., 8 B. T. A. 1030.
We believe that, from a reading of the contracts in the instant case, the unescapable conclusion to be reached is that the employees or parties of the second part became stockholders of petitioner from the date the respective contracts were entered into, and that the amounts in question which were credited to the stock purchase accounts of such employees were dividends within the meaning of that term as defined in section 201 (a) of the Revenue Act of 1918. The respondent’s determination with respect to this issiie is approved.
The seventeenth issue is whether the respondent erred in disallowing as a deduction from gross income the $500 paid by petitioner in 1921 to its president for the purpose of reimbursing the latter for a loss which the latter sustained in a personal investment. It appears that about the year 1916, petitioner’s president purchased some' stock in the Safety-Light Co. at-a total cost of $500, which stock became worthless during the year 1918. It also appears that Zahn’s motive in purchasing the stock was to retain certain business which petitioner was then enjoying from the Memphis Terminal Corporation, whose president was then promoting the Safety-Light Co., and had called upon Zahn to purchase stock in the new corporation. The evidence does not show that Zahn purchased the stock in question for anyone’s account but his own, or that petitioner had anything whatever to do with the transaction until the year 1921, at which time either its directors or stockholders discussed the matter and decided *941 to reimburse Zahn for his loss, which petitioner did in 1921. The question is whether the amount paid Zahn in 1921 by petitioner was an “ ordinary and necessary ” business expense within the provisions of section 234 (a-) (1) of the Revenue Act of 1921. We think it was not. The stock was not purchased for petitioner, but was purchased for and by Zahn in his individual capacity. The loss resulting therefrom was Zahn’s loss, and not petitioner’s. The fact that petitioner later decided to reimburse Zahn for his loss was a pure gratuity on the part of petitioner which it was under no obligation to make. The respondent’s determination on this issue is approved.
The eighteenth issue is whether petitioner has made overpayments of taxes in respect of the taxable years 1918, 1919, and 1920. Decision relative thereto will be reserved until after the parties have submitted their computations in accordance with Rule 50.
Reviewed by the Board.
Further proceeding will be conducted under Rule 62 (a) and (6).
Steenhagen did not participate in the consideration of this report.